1  James J. Pisanelli, Esq., Bar No. 4027
   JJP@pisanellibice.com
2  Christopher R. Miltenberger, Esq., Bar No. 10153
   CRM@pisanellibice.com
3  Michael R. Kalish, Esq., Bar No. 12793
   MRK@pisanellibice.com
4  PISANELLI BICE PLLC
   3883 Howard Hughes Parkway, Suite 800
5  Las Vegas, Nevada 89169
   Telephone:  702.214.2100
6  Facsimile:  702.214.2101



FILED ✓   ___ RECEIVED
___ ENTERED   ___ SERVED ON
COUNSEL/PARTIES OF RECORD

MAY – 6 2014

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

7  *Attorneys for Non-Parties Bally Technologies,*
   *Brian M. Kelly, John G. Kroeckel, John E. Link, and Paul L. Hickman*

8              **UNITED STATES DISTRICT COURT**

9                 **DISTRICT OF NEVADA**

10

11  AGINCOURT GAMING, LLC,

                    Plaintiff,          2:14-ms-00032
12

13  v.

14  ZYNGA, INC.,                        **MOTION TO QUASH OR MODIFY**
                                        **DEFENDANT ZYNGA, INC.'S SUBPOENAS**
15                  Defendant.

16          Non-parties Bally Gaming, Inc. d/b/a Bally Technologies ("Bally"), Brian M. Kelly, John

17  G. Kroeckel, John E. Link, and Paul L. Hickman (collectively, the "Bally Parties") hereby move

18  to quash, or in the alternative modify, the subpoenas served on the Bally Parties by Defendant

19  Zynga, Inc. ("Zynga") relating to a lawsuit pending in the United States District Court for the

20  District of Delaware as Civil Action No. 1:11-cv-00720-RGA (the "Agincourt Lawsuit").

21  Although neither Bally nor any of the Bally Parties are parties to the Agincourt Lawsuit, Zynga

22  has served subpoenas (the "Subpoenas") on each of them that are unreasonably overbroad, seek to

23  obtain trade secrets or other confidential research, development, or commercial information, and

24  otherwise attempt to impose an undue burden on Bally.  In light of the undue burden the

25  Subpoenas seek to impose on Bally, this Court "*must* quash or modify" the Subpoenas pursuant to

26  Federal Rule of Civil Procedure 45(d)(3).

27          This Motion is made and based on Federal Rule of Civil Procedure 45 and Local

28  Rule 26-7, and is supported by the attached Memorandum of Points, the declaration of

                                        1

1    Christopher R. Miltenberger, Esq. and exhibits thereto, and any oral argument this Court may

2    choose to consider.

3          DATED this 6th day of May, 2014.

4                                              PISANELLI BICE PLLC

5

6                                    By:

7                                        James J. Pisanelli, Esq., Bar No. 4027
                                         Christopher R. Miltenberger, Esq., Bar No. 10153
8                                        Michael R. Kalish, Esq., Bar No. 12793
                                         3883 Howard Hughes Parkway, Suite 800
9                                        Las Vegas, Nevada 89169
                                         Telephone:   702.214.2100
10                                       Facsimile:   702.214.2101

11                                       *Attorneys for Non-Parties Bally Technologies,*
                                         *Brian M. Kelly, John G. Kroeckel, John E. Link, and*
12                                       *Paul L. Hickman*

13                         **MEMORANDUM OF POINTS AND AUTHORITIES**

14   **I.      INTRODUCTION**

15          The underlying lawsuit between Agincourt Gaming, LLC ("Agincourt") and Zynga,

16   currently pending before the United District Court for the District of Delaware, relates to

17   Agincourt's claims of patent infringement against Zynga.  (Ex. 8, Compl. at ¶¶ 7-10, 28-32,

18   33-37; Ex. 9, Suppl. Compl. at ¶¶ 27-31.)  Neither Bally nor any of the Bally Parties are parties to

19   the Agincourt Litigation or have any interest in the outcome of that lawsuit.  While Bally sold the

20   three patents at issue in the Agincourt Litigation to the plaintiff in that action several years ago,

21   Agincourt is now the owner of all rights associated with those patents.  Nevertheless, Zynga has

22   sought to drag Bally and its employees and agents into the center of discovery in that case by

23   issuing a series of Subpoenas that are unduly burdensome on their face.

24          Ignoring its obligation to "take reasonable steps to avoid imposing an undue burden or

25   expense" on the Bally Parties, Zynga issued the Subpoenas seeking documents unrelated to the

26   patents at issue in its litigation and that seek to delve into the deepest recesses of Bally's highly

27   sensitive, confidential financial and commercial information.  For example, the Subpoenas seek to

28   obtain any and all documents in Bally's possession relating not only to the three patents being

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1    asserted in the Agincourt Litigation, but also information relating to dozens of other patents and

2    patent applications, documents spanning a period of over 20 years.  Beyond seeking just the

3    documents relating to the prosecution of the patents at issue in the Agincourt Litigation, Zynga

4    goes on to demand the production documents relating to any of Bally's efforts to "monetize" the

5    patents, documents relating to the development and implementation of Bally's proprietary

6    products and technologies wholly unrelated to the patents in dispute in the Agincourt Litigation,

7    and even personnel files.  Such an intrusive request to look into Bally's financial and business

8    affairs is inappropriate.  Furthermore, if Bally was required to comply with the unduly

9    burdensome subpoenas, the recovery, processing, privilege review, and production of this

10    enormous scope of documents would impose an unreasonable burden on Bally in the tens of

11    thousands of dollars.  The Subpoenas served by Zynga are the epitome of undue burden, and the

12    Court must quash or otherwise modify them in order to protect Bally from such a hardship.

13    **II.     RELEVANT FACTUAL AND PROCEDURAL HISTORY**

14         **A.     <u>Bally Sells Patents To Agincourt.</u>**

15         In or around May 2011, Bally Gaming, Inc., a subsidiary of Bally, sold certain rights in

16    various patents and patent applications to Agincourt pursuant to a Patent Sale Agreement.

17    Thereafter, Bally Gaming, Inc. assigned all rights, title, and interest in those patents to Agincourt

18    pursuant to the terms of the agreement.

19         **B.     <u>Agincourt Sues Zynga For Patent Infringement.</u>**

20         On August 17, 2011, several months after acquiring certain patents and patent applications

21    from Bally Gaming, Inc., Agincourt filed a Complaint for Patent Infringement (the in the United

22    States District Court for the District of Delaware against Zynga (the "Agincourt Litigation").  (Ex.

23    8, Compl.)  Agincourt alleged in its Complaint that Zynga is currently infringing on patents that

24    Agincourt holds all the rights and interest in, specifically United States Patents Nos. 6,758,755

25    (the "'755 patent") and 6,306,035 (the "'035 patent").  (*Id.* at ¶¶ 7-10, 28-32, 33-37.)  Agincourt

26    supplemented its Complaint on September 30, 2013, and alleged further patent infringement by

27    Zynga based on its rights, title, and interest in United States Patent No. 8,454,432 (the

28

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1    '"432 patent"). (Ex. 9, Suppl. Compl. at ¶¶ 27-31.) The '755, '035, and '432 patents were included

2    within the patents and rights Agincourt acquired from Bally Gaming, Inc.

3         **C.    Zynga Issues Subpoenas To Bally, Its Employees And Agent.**

4         Two and half years after Agincourt filed its Complaint, Zynga turned its attention in

5    discovery to Bally and its employees and agents.   On February 11, 2014, Zynga served a

6    subpoena on Paul Hickman, an attorney previously retained by Bally to assist in prosecution of

7    various patents.   (Ex. 3, Hickman Subp.) On February 13, 2014, Zynga served additional

8    subpoenas on Brian Kelly, John Kroeckel, and John Link, three of Bally's current employees who

9    are also some of the named inventors of the '755, '035, and '432 patents.  (Ex. 4, Kelly Subp.;

10   Ex. 5, Kroeckel Subp.; Ex. 6, Link Subp.)   Lastly, on February 20, 2014, Zynga served a

11   subpoena on Bally encompassing all of the documents previously sought directly from its

12   employees and agents. (Ex. 2, Bally Subp.)

13        With only slight modifications, each of the Subpoenas sought the same information. (*See*

14   Exs. 2-6.)  In short, the Subpoenas sought any and all documents relating to or referencing in any

15   way the '755, '035, and '432 patents as well as any documents relating to approximately 50 other

16   patents or patent applications.  (*Id.*) (identifying approximately 50 patents and applications as the

17   "Related Patents and Applications").   The requests included demanding the production of the

18   entire prosecution files for over 50 patents and applications, all documents relating to any

19   litigation, reexamination, or interference proceedings relating to those patents and applications, all

20   e-mails touching upon those patents, all documents relating to Bally's commercialization of those

21   patents, documents relating to the sale or licensing of those patents, and even the personnel files

22   relating to various Bally employees. (*Id.*)  Notably, the scope of the requested documents reaches

23   back for over 20 years and seeks information relating to products and technologies wholly

24   unrelated to patents at issue in the Agincourt Litigation.  Regardless of the excessive scope of the

25   Subpoenas, all of the documents sought thereby are documents that are ultimately in the

26   possession, custody, and control of Bally.

27        In light of the of the overly broad scope of the Subpoenas, each of the Bally Parties served

28   written objections on Zynga before the time specified for compliance and within fourteen days

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1    after service. (Ex. 7, Objections to Bally, Hickman, Kelly, Kroeckel, and Link Subpoenas.)  The

2    Bally Parties generally objected to the undue burden that the Subpoenas imposed in light of their

3    scope as well as the onerous and expensive electronic discovery that would be required by the

4    nature of the requests, among other things objectionable bases.  (*Id.*)  The Bally Parties also

5    provided specific objections as to each of the 27 to 34 requests set forth in each of individual

6    Subpoenas. (*Id.*)

7           **D.**    **Bally Attempts To Cooperate With Zynga In Hopes of Alleviating The Undue Burden Arising From The Subpoenas.**

8

9            After the Bally Parties served their initial written objections, Zynga contacted counsel to

10   arrange for a meet-and-confer to discuss objections.  On February 24, 2014, counsel for the Bally

11   Parties and Zynga engaged in their first conference call relating to the scope of the Subpoenas.

12   (Ex. 1, Miltenberger Decl. ¶ 4.)  During that call, counsel explained to Zynga that all of the

13   documents sought by way of the various Subpoenas were within the possession, custody, and

14   control of Bally.  (*Id.* at ¶ 5.)  Counsel also reiterated the Bally Parties' various objections to the

15   Subpoenas, including the unduly burdensome scope and the unreasonable costs that they sought

16   to impose on the Bally Parties, non-parties to the Agincourt Litigation.  (*Id.*)  Nevertheless,

17   counsel indicated that the Bally Parties were willing to work with Zynga in hopes of narrowing

18   the scope of the requests to a reasonable production so long as the Bally Parties would be

19   reimbursed for the significant fees and costs that would necessarily be associated with any such

20   production. (*Id.*)

21           In response to the articulation of Bally's objections, Zynga's counsel proclaimed that he

22   had "very little concern for [the Bally Parties'] burden." (*Id.* at ¶ 6.)  Instead, Zynga continued to

23   insist on an overly broad scope of documents including patent prosecution files for patents and

24   applications not subject to the Agincourt Litigation, emails and correspondence dating back

25   nearly 20 years, and highly sensitive commercial information relating to Bally's business

26   practices, finances, and personnel.  (*Id.*)  Zynga also refuted Bally's position that it was a non-

27   party to the litigation claiming that Bally's relationship to the patents asserted by Agincourt in

28   their litigation eviscerated any potential claims they would normally have to the reimbursement of

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1    fees and costs. (*Id.*)  While Zynga agreed that it would examine the patents and let Bally know if

2    it could limit the scope of its requests, it indicated that it believed Bally was not entitled to any

3    compensation relating to its efforts to produce documents in response to the Subpoenas. (*Id.*)

4         Zynga reiterated its positions in a letter nearly a month later.  (Ex. 10.)  In that letter,

5    Zynga claimed that by selling the patents to Agincourt, Bally somehow "invited this burden upon

6    itself" relating to the production of documents and refused to reimburse Bally for any of the fees

7    and costs relating to its production efforts. (*Id.* at p. 2.)  Zynga also refused to narrow the scope

8    of its Subpoenas in any meaningful manner.  While Zynga agreed to limit the scope of the so-

9    called "Related Patents and Applications" to approximately 15 such patents, it refused to narrow

10   the time frame for production still insisting on documents that dated back for nearly 20 years. (*Id.*

11   at p. 7.)  Zynga further reiterated its demands for extensive documents relating to Bally's

12   confidential, financial, and commercial information. (*Id.* at pp. 7-9.)  Zynga's demands included

13   documents relating to any of Bally's products that "related" in any way to the patents regardless of

14   their relevance to the Agincourt Litigation. (*Id.*)

15        In light of Zynga's position, the parties participated in further meet-and-confer telephone

16   conferences on March 24 and 28 and on April 4 and 29.  (Ex. 1, Miltenberger Decl. at ¶ 7.)

17   During those calls the parties continued their efforts to reach an agreement as to the scope of the

18   Subpoenas and the reimbursement of Bally's significant costs associated with any potential

19   production. (*Id.*)  During those calls, counsel informed Zynga that Bally did not have in-house

20   capabilities to run electronic searches on potentially discoverable emails and other electronic

21   documents. (*Id.* at ¶ 8.)  As such, Bally informed Zynga that it would have to employ a third

22   party to perform certain searches of electronic documents and that those costs would likely

23   approach $20,000 by itself in light of the nature of Zynga's requests. (*Id.*)  While Bally requested

24   a commitment from Zynga that it would reimburse Bally for fees and costs associated with the

25   recovery and production of documents, Zynga steadfastly refused to either narrow the scope of its

26   requests or reimburse Bally. (*Id.*)  Faced with the unduly burdensome Subpoenas and staring at

27   upwards of $100,000 in costs and attorneys' fees if it was required to respond to the overbroad

28

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1  requests, Bally was left with no option but to seek redress from this Court and advised Zynga of

2  its intention. (*Id.* at ¶ 10.)

3  **III.   LEGAL ANALYSIS**

4       **A.   This Court Has Authority To Quash Or Modify The Subpoenas.**

5       Of course, a "subpoena may command…production of documents, electronically stored

6  information, or tangible things at a place within 100 miles of where the person resides, is

7  employed, or regularly transacts business in person…" Fed. R. Civ. P. 45(c)(2).  However, while

8  parties such as the Bally Parties are alleviated from the requirement of producing documents if

9  they timely serve written objections (Fed. R. Civ. P. 45(d)(2)(B)), they are still permitted to seek

10  protection from the court for the district where compliance is required in order to resolve disputes.

11  *See* Fed. R. Civ. P. 45(d)(3).  Specifically, under the recently amended rule, on a timely motion,

12  "the court for the district where compliance is required ***must*** quash or modify a subpoena

13  that:…(iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added).

14  Similarly, the Court may quash or modify a subpoena that seeks the disclosure of "trade secret or

15  other confidential research, development or commercial information" or may otherwise require

16  reasonable compensation to the subpoenaed party.  Fed. R. Civ. P. 45(d)(3)(B), (C).

17       Here, Zynga's Subpoenas collectively seek documents that are all within the possession,

18  custody, and control of Bally.  As such, any production that could be required would come from

19  Bally.   The subpoena to Bally required compliance in the District of Nevada, specifically

20  requesting production of documents at Legal Process Service, located at 626 South 8th Street, Las

21  Vegas, NV 89101.  (Ex. 2, Bally Subp.)  As such, this Court within the District of Nevada has the

22  authority to quash or modify the Subpoenas at issue.  Fed. R. Civ. P. 45(d).

23       **B.   The Court Should Quash The Subpoenas As They Seek To Impose An Undue Burden On Bally.**

24

25            *1.   The Subpoenas Are Unduly Burdensome.*

26       As reflected n Rule 45, a party that issues a subpoena "must take reasonable steps to avoid

27  imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

28  When a party fails to do so, the Court "must enforce this duty and impose an appropriate

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1    sanction" on the subpoenaing party. *Id.* Similarly, on a timely motion, this Court "***must*** quash or

2    modify a subpoena that...subject a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv)

3    (emphasis added). In fact, when "a subpoena is overly broad and burdensome, the court may, on

4    its own initiative, modify the language in order to correct the ambiguity and prevent the undue

5    burden." *Diamond State Ins. Co. v. Rebel Oil Col., Inc.*, 157 F.R.D. 691, 695 (1994), citing

6    *Westside Ford v. United States*, 206 F.2d 267, 635 (9th Cir. 1953). In doing so, the "court may

7    also make any order which justice requires to protect a party or person from undue burden,

8    oppression or expense." *Diamond State Ins. Co.*, 157 F.R.D. at 696.

9          When a party objects to a subpoena as unduly burdensome or onerous, it bears the burden

10   of establishing such a claim by showing "the manner and extent of the burden and the injurious

11   consequences of insisting upon compliance with the subpoena." *Lo v. Fed. Nat. Mortgage Ass'n*,

12   2:12-CV-01411-GMN-VCF, 2013 WL 2558614, *4 (D. Nev. June 10, 2013), citing *Goodman v.*

13   *United States*, 369 F.2d 166, 169 (9th Cir. 1966). Importantly, this Court is vested with broad

14   discretion in determining whether a subpoena is unduly burdensome. *Exxon Shipping Co. v.*

15   *U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir.1994). In determining whether a subpoena is

16   unduly burdensome and whether the Court should quash the subpoena, the Court will consider a

17   variety of factors including: (1) the relevance of the requested information to the action's claims

18   or defenses; (2) "the need of the party for the documents;" (3) "the breadth of the document

19   request;" (4) "the time period covered by" the subpoenas; and (5) "the particularity with which the

20   documents are described and the burden imposed." *Lo*, 2:12-CV-01411-GMN-VCF, 2013

21   WL 2558614 at *4; *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005).

22         Here, the Subpoenas issued by Zynga seek to impose an undue burden on Bally and/or its

23   employees and agents that cannot be permitted. First and foremost, nearly every single one of the

24   requests in the various Subpoenas seeks the production of "all Documents" or "all

25   Communications" relating to a variety of topics involving or relating to "any of the Asserted

26   Patents and/or Related Patents and Applications." (*See* Ex. 2, Bally Subp., Req. Nos. 1-19, 23-24,

27   31-34.) Courts in this jurisdiction have found that subpoenas that seek "any and all documents"

28   for a time period as narrow as five-years to be unduly burdensome and subject to quash or

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1  modification. *See Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*,

2  2:10-CV-01385-JCM, 2011 WL 4549232, *2-3 (D. Nev. Sept. 29, 2011), citing *Moon*,

3  232 F.R.D. at 637. Similarly, and as other courts have found, "a subpoena is unduly burdensome

4  where it seeks to compel production of documents regarding topics unrelated to or beyond the

5  scope of the litigation." *Gorce v. Glaudet*, 09-CV-01630-BTM-WMC, 2012 WL 1831574

6  (S.D. Cal. May 18, 2012), citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14

7  (9th Cir. 2003); *see Hone v. Presidente U.S.A., Inc.*, C08-80071 JF HRL, 2008 WL 9010061

8  (N.D. Cal. July 21, 2008) (a subpoena that requested the non-party's communications, including

9  emails and instant-messages, over a six-year period imposed an undue burden on the non-party

10  These overly broad requests are vague, ambiguous and seek documents wholly unrelated

11  to the scope of the Agincourt Litigation. As defined in the Subpoenas, the "Related Patents and

12  Applications" refer to over 50 patents or applications that are not at issue in the Agincourt

13  Litigation, some of which were filed with the U.S. Patent and Trademark Office (the "USPTO")

14  nearly 20 years ago. (Ex. 2, Bally Subp., p. 5.) Such indiscriminate requests without necessary

15  particularity are facially unduly burdensome since they seek documents that far exceed the scope

16  of the Agincourt Litigation. *Painters Joint Comm.*, 2:10-CV-01385-JCM, 2011 WL 4549232 at

17  *2-3; *see Century Sur. Co. v. Master Design Drywall, Inc.*, 09CV0280 LAB (AJB), 2010

18  WL 2231890 (S.D. Cal. June 2, 2010) (requests for documents over a 11 year period imposed an

19  undue burden on the non-party). Accordingly, the Court should quash the facially unduly

20  burdensome Subpoenas in their entirety.

21  Regardless, the over breadth of Zynga's requests do not stop with the indiscriminate

22  requests and unreasonably broad definitions. While Zynga has argued the entire prosecution of

23  the "Related Patents and Applications" with the USPTO is relevant to potential limitations in the

24  patents actually at issue in the Agincourt Litigation, the Subpoena requests go far beyond simply

25  seeking patent prosecution files.[1]  Instead, Zynga's Subpoenas go on to seek any and all

26  documents regarding the "conception and/or reduction to practice of any alleged invention(s)

27

28  [1]  Of note, the vast majority, if not all, of the patent prosecution history for each of the supposed "Related Patents and Applications" are publicly available from the USPTO. Those documents can be obtained by Zynga from the USPTO without having to burden a non-party.

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1  covered" not only by the patents in dispute in the litigation but also the "Related Patents and

2  Applications" as well as Bally Products covered by or even "related to" the patents, all wholly

3  unrelated to the Agincourt Litigation. (Ex. 2, Bally Subp., Req. Nos. 3, 24-25, 27-29.) Likewise,

4  requests relating to productions "relating to" specifications of the "Asserted Patents" or the

5  "Related Patents and Applications" potentially encompass products including systems, computers,

6  software, and game features far beyond the scope of discovery in the Agincourt Litigation. (*See,*

7  *e.g., id.*, Req. No. 34.) Demanding the production of all such documents, software and source

8  code relating to these unrelated products is unreasonable, unduly burdensome, and improperly

9  invasive into Bally's business operations.

10     The overreaching goes on.   Other requests seek any and all documents and

11  communications relating to "any attempts to license and/or sell, offers to license and/or sell,

12  and/or the licensing and/or sale of any of the Asserted Patents and/or Related Patents and

13  Applications" and other related confidential, financial information. (*Id.*, Req. Nos. 13-15, 17-21,

14  23, 33.) Still other requests seek documents relating to Bally's assessments relating to the value

15  of these patents or other internal business assessments. (*Id.*, Req. Nos. 5, 18, 22.) These types of

16  requests seek highly sensitive, confidential financial and/or commercial information relating to

17  Bally's business operations and/or its trade secrets. Such information is expressly protected from

18  disclosure absent a specific demonstration of substantial need. Fed. R. Civ. P. 45(d)(3)(C).

19     Further still, other requests are unreasonably vague such that they would require Bally to

20  speculate as to what they are seeking or perform an independent legal analysis to interpret what is

21  sought by the Subpoena. For instance, several of the requests would require Bally speculate as to

22  legal conclusions and interpretations that will ultimately be decided by the court in the Agincourt

23  Litigation in order to determine if it possesses, and can produce, any documents relating to

24  "patentability," "unpatentability," "non-obviousness," and even attempt to determine what

25  constitutes "Prior Art" as to over 50 patents and applications. (*See, e.g.*, Ex. 2, Bally Subp., Req.

26  Nos. 4-9.) Such requests are so vague as to require speculation and undue burden in determining

27  what documents are responsive.   *See Games2U, Inc. v. Game Truck Licensing, LLC,*

28  MC-13-00053-PHX-GMS, 2013 WL 4046655 (D. Ariz. Aug. 9, 2013) (an overbroad request for

10

1    documentation in support of the contention that a patent was valid and enforceable imposed an

2    undue burden on the non-party).

3           Demonstrating the lengths of the fishing expedition that Zynga has gone on with these

4    Subpoenas, Zynga even seeks the "personnel files" of several of Bally's current and former

5    employees. (*Id.*, Bally Subp., Req. No. 30.) There should be no debate that such documents are

6    not reasonably likely to lead to the discovery of admissible evidence in the Agincourt Litigation.

7    Nevertheless, Zynga's unreasonable demands persist.

8           All of the requests set forth in the Subpoenas are unduly burdensome on their face. They

9    seek the indiscriminate production of documents relating to countless patents and applications not

10   subject to the Agincourt Litigation and other documents that Zynga will not be able to

11   demonstrate are within the scope of discovery in that matter. *Transcor, Inc. v. Furney Charters,*

12   *Inc.*, 212 F.R.D. 588, 591 (D.Kan. 2003) ("when relevancy is not apparent on the face of the

13   request, the party seeking the discovery has the burden to show the relevancy of the request.") In

14   light of the irrelevance of the documents sought, the over breadth of the document requests, the

15   over 20 year time period of documents sought, as well as Zynga's failure to identify the

16   documents they sought with sufficient particularity, the Subpoenas are unduly burdensome and

17   should be quashed in their entirety. *Lo*, 2:12-CV-01411-GMN-VCF, 2013 WL 2558614 at *4;

18   *Moon*, 232 F.R.D. at 636.

19                    *2.      The Equities Weigh in Favor of Quashing the Subpoenas.*

20          When the Court is confronted with an unduly burdensome subpoena, it "must weigh the

21   burden placed on the subpoenaed party against the prejudice that would be endured by the

22   requesting party." *Lo*, 2:12-CV-01411-GMN-VCF, 2013WL 2558614 at *4.  In light of the

23   overreaching nature of the Subpoenas, the burden Zynga seeks to impose on Bally is

24   extraordinary.   The Subpoenas seek to have Bally recover, review, process, and produce

25   documents pre-dating the 1996 filing of certain patent applications.  This process would involve

26   the recovery of archived documents from multiple offices and storage facilities in several

27   locations throughout Nevada and California. (Ex. 1, Miltenberger Decl. at ¶ 9.)  It would also

28   require the recovery of patent prosecution files from multiple attorneys relating to over fifty

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

11

1    patents or applications not even in dispute in this case.  (*Id.*)  Bally has undertaken preliminary

2    efforts to begin compiling documents from these various sources and has already identified

3    several thousands of pages of documents that would need to be reviewed if the Subpoenas were

4    enforced as drafted.   (*Id.*)   Such a review of those documents alone for responsiveness and

5    privilege would likely take over 100 man-hours. (*Id.*)

6              However, perhaps the biggest obstacle in this case is the retrieval and processing of e-mail

7    communications.  Many of Zynga's requests specifically seek Communications, including e-mail

8    communications, from Bally's employees and attorneys. (*See* Ex. 2, Bally Subp., Req. Nos. 4-5,

9    11, 13-14, 19, 31, 34.) As Bally has informed Zynga, while it has the capability to pull email files

10   from certain custodians, it does not have the in-house capability to search those emails by key

11   terms and would have to employ a third-party vendor in order to retrieve any potentially

12   responsive e-mails. (Ex. 1, Miltenberger Decl. at ¶ 8.) Bally has pulled the .pst e-mail files for

13   the potentially relevant custodians, and has obtained a quote from a third-party vendor as to the

14   potential costs associated with running search terms and processing the potentially discoverable

15   information.  The hard costs associated with searching these emails will likely approach, if not

16   exceed, $20,000.  (*Id.*)  This does not even take into account the additional time that would be

17   necessary for Bally to conduct a review for responsiveness and privilege, another task that would

18   necessarily require the use of attorneys and expenditure of significant resources.

19             In total, Bally has estimated that the total potential costs associated with assembling,

20   reviewing, processing, and producing the documents and communications sought by the

21   Subpoena would be between $50,000 and $100,000, or more. (*Id.* at ¶ 9.)  Other courts have

22   found that subpoenas requiring far less burden would in fact be unduly burdensome and weigh in

23   favor of quashing or modifying the subpoena. *See EEOC v. Randstad*, 765 F.Supp.2d 734, 742

24   (D.Md. 2011) (finding a request in a subpoena that would likely require over 120 hours of time

25   and cost between $14,000 and $19,000 to complete unduly burdensome); *see also Fernandez v.*

26   *California Dep't of Correction & Rehab.*, 2:11-CV-01125 MCE, 2014 WL 794332 (E.D. Cal.

27   Feb. 27, 2014) (the request for documentation covering a five year period, which would cost

28   approximately $24,000 to produce, was unduly burdensome); *Am. Soc. of Media Photographers,*

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1  *Inc. v. Google, Inc.*, 13 C 408, 2013 WL 1883204 (N.D. Ill. May 6, 2013) reconsideration denied,

2  13 C 408, 2013 WL 4953796 (N.D. Ill. Sept. 12, 2013) (subpoena imposed an undue burden on a

3  non-party when it required significant amount of time, resources, and money to respond as well as

4  seeking confidential, proprietary information).   Such a burden on a non-party is simply

5  unreasonable.

6       In contrast, the prejudice to Zynga if the Court quashes the Subpoenas is minimal.  Zynga

7  has the ability to obtain the USPTO files relating to whatever patents and applications it wants

8  from the publicly available documents from the USPTO itself.   Likewise, to the extent the

9  Subpoenas seek documents and communications relating to Agincourt (the focus of many of the

10  requests in the subpoena), Zynga can get that information directly from Agincourt, the party to the

11  litigation.   In fact, Zynga and Agincourt recently entered into a stipulation concerning an

12  electronic discovery protocol that will undoubtedly yield the production of much of what Zynga is

13  seeking from Bally.  (*See* Ex. 11.)  Rather than impose a potentially six-figure burden on a non-

14  party, Zynga can simply seek the information from the party to the litigation itself.   If the

15  Subpoenas are quashed, the only information Zynga might not obtain is the information it is not

16  entitled to in the first place:  information regarding irrelevant patents and applications and Bally's

17  highly confidential financial and commercial information unrelated to Agincourt.

18       In light of the extensive burden the Subpoenas seek to impose on Bally and the minimal

19  prejudice to Zynga, the equities weigh heavily in favor of Bally and the Court should quash the

20  Subpoenas in their entirety.

21  **C.**    **Zynga Cannot Demonstrate A Substantial Need For Bally's Trade Secrets Or Other Confidential Research, Development, Or Commercial Information.**

22

23       Even if the scope of Zynga's requests were reasonable and narrowly tailored, they would

24  still not be entitled to obtain Bally's confidential, financial, and commercial information.  In order

25  to protect a person subject to a subpoena, Rule 45 permits the court for the district where

26  compliance is required to quash or modify the subpoena to the extent it seeks the production of

27  "trade secret or other confidential research, development, or commercial information."  Fed. R.

28  Civ. P. 45(d)(3)(B)(i); *Takiguchi v. MRI Int'l, Inc.*, 2:13-CV-01183-JAD, 2013 WL 6528507

13

1    (D. Nev. Dec. 11, 2013).  Notably, Rule 45(d)(3)(B)(i) tracks the protection of confidential

2    information provided by Rule 26(c)(1)(G).    *Id.*    "Trade secret or commercially sensitive

3    information must be 'important proprietary information' and the party challenging a subpoena

4    must make 'a strong showing that it has historically sought to maintain the confidentiality of this

5    information.'"  *Id.*, citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006).  Once

6    the subpoenaed party demonstrates the information sought falls within the confines of

7    Fed. R. Civ. P. 45(d)(3)(B)(i), "the burden shifts to the requesting party to show a substantial need

8    for the testimony or material that cannot be otherwise met without undue hardship." *Id.* (internal

9    quotations omitted).

10          The majority of the requests in the Subpoenas seek Bally's "trade secret or other

11   confidential research, development, or commercial information" that should not be produced.  For

12   instance, Request No. 3 seeks all documents relating to the "conception and/or reduction to

13   practice of" Bally's inventions relating to over 50 patents or applications. (*See* Ex. 2, Req. No. 3,

14   24-28.)  Further, numerous requests seek Bally's confidential, commercial information relating to

15   its licensing efforts relating to the patents within its intellectual property portfolio.  (*See id.*

16   Req. Nos. 13-23, 33.)  These requests go so far as to seek information relating to the negotiation

17   of commercial transactions that were never consummated or that are even ongoing.  (*Id.*)  Zynga

18   even seeks all documents relating to the research, development, and sale of any of Bally's

19   products that possibly touch upon any of the so-called "Related Patents and Applications."

20   (*See id.*, Req. No. 24.)  Information regarding Bally's revenues derived from its patents, products

21   in or previously in research and development, and its commercial transactions with third parties

22   are highly confidential and if disclosed to others could significantly harm Bally in its future

23   business practices and commercial negotiations.  This is precisely the type of information that

24   Bally maintains with the utmost secrecy and it cannot be disclosed to third parties and potentially

25   competitors.  As such, this sensitive information must be protected as Bally should not be made a

26   victim simply because it was served by an overly broad subpoena by a party in a litigation to

27   which it is not a party. Fed. R. Civ. P. 45(d)(3)(B).

28

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1      Further, and as set forth above, the information sought by Zynga relating to Bally's

2      finances and business practices is entirely irrelevant to the issues set forth in the Agincourt

3      Litigation.   That lawsuit concerns Agincourt's allegations that Zynga is infringing on three

4      patents. That is all.  How research and development relating to Bally's products and its financial

5      relationships associated with patents unrelated to that litigation is relevant to the Agincourt

6      Litigation is left to the imagination.  Zynga cannot demonstrate that it has a substantial need for

7      this information, and the Court should quash the Subpoenas accordingly.   Fed. R. Civ. P.

8      45(d)(3)(B).

9      **D.**      **If The Court Modifies The Subpoenas Instead Of Quashing Them In Their**
       **Entirety, Bally Is Entitled To Its Attorneys' Fees And Costs.**

10

11      Of course, parties and the court have a duty to protect nonparties subject to a subpoena

12     from undue burden ***and expense***.  *See* Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii), (d)(3(C); *see Moon*,

13     232 F.R.D. at 637-38 (C.D.Cal.2005); *see also Dart Industries Co. v. Westwood Chemical Co.*,

14     649 F.2d 646, 649–50 (9th Cir.1980) (broader restrictions on discovery appropriate to protect

15     nonparties).  In doing so, the court must shift a non-party's costs of compliance with a subpoena,

16     if those costs are "significant."    *See* Fed. R. Civ. P.  45(d)(2)(B)(ii); *see Legal Voice v.*

17     *Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (costs of $20,000 incurred by a nonparty to

18     comply with a subpoena duces tecum were significant).

19      Courts will "balance the equities of the particular case," in determining what portion of the

20     costs of compliance should be shifted to the subpoenaing party.  *Siltronic Corp. v. Employers Ins.*

21     *Co. of Wausau*, 3:11-CV-1493-ST, 2014 WL 991822 (D. Or. Mar. 13, 2014).  Factors the court

22     should consider include "whether the non-party actually has an interest in the outcome of the case,

23     whether the non-party can more readily bear its cost than the requesting party, and whether the

24     litigation is of public importance."  *Id.*, citing *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182

25     (D.C. Cir. 2001).

26      All of these factors relevant to this Court's determination weigh heavily in favor of

27     allocating any cost of compliance to Zynga.  Bally is a non-party to the Agincourt Litigation with

28     no interest, financial or otherwise, in the outcome of that case.  Instead, three years ago Bally sold

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1    certain patents, applications and rights to Agincourt.  Nothing more.  Bally has no rights, title or

2    interest in the patents asserted in the Agincourt Litigation and does not stand to benefit financially

3    no matter the outcome of that case.  Further, Zynga is not a mom-and-pop operation incapable of

4    incurring the costs associated with the discovery of which it seeks.  Zynga is a multi-billion dollar

5    company with a market cap in excess of $3 billion.  (Ex. 12, Zynga Stock Quote dated May 5,

6    2014.)  There is no reason to shift the costs of discovery to protect this wealthy litigant and

7    impose such a significant burden on Bally.  Furthermore, while the issue of Zynga's alleged patent

8    infringement is surely of great importance to the parties involved in the litigation, it is of no

9    special or particular interest to the public that could support shifting the costs of production to

10   non-party Bally.

11        Moreover, the Ninth Circuit has developed still other factors that should be considered in

12   apportioning discovery costs, including: "(1) the scope of the discovery; (2) the invasiveness of

13   the request; (3) the extent to which the producing party must separate responsive information

14   from privileged or irrelevant material; and (4) the reasonableness of the costs of production."

15   *Columbia Broadcasting System, Inc.,* 666 F.2d 364, 372 n.9 (9th Cir.1982).  These factors, too,

16   weigh in favor of shifting any cost of production to Zynga.

17        As set forth above, the requests seek documents far beyond the proper scope of discovery

18   in the Agincourt Litigation and are unreasonably invasive into Bally's business practices.  Further,

19   in light of the nature of the requests and the types of documents sought, if ordered to comply with

20   the Subpoenas, Bally will have to incur significant expenses performing a relevance and privilege

21   review of tens, if not hundreds, of thousands of pages of documents.  Since many of these

22   documents seek files in the possession of Bally's counsel, the privilege review of associated with

23   such a production will be extensive.  Finally, the fees that Bally would be forced to incur if it had

24   to comply with the unduly burdensome scope of the Subpoenas is unreasonable for any non-party.

25   In light of the invasive nature of the requests and the electronic discovery that would be required,

26   Bally is facing potentially a six-figure bill relating to producing documents associated with a

27   litigation to which it is not a party.  Such costs should not be borne by a non-party and instead

28   should be shifted to Zynga.

E.   **Alternatively, Bally Is Also Entitled To Its Attorneys' Fees And Costs As A Result Of Zynga's Failure To Take Reasonable Steps To Avoid Imposing An Undue Burden On Bally.**

Finally, if the Court compels Bally to produce documents in response to the Subpoenas, it should still award Bally the attorneys' fees and costs associated with such a production as a sanction against Zynga. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). If a party fails to do so, the Court is empowered to "impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees..." *Id.*; *see Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677, 680 (N.D. Okla. 2008) (nonparty to patent litigation was entitled to reimbursement for attorney fees it incurred in defending against subpoenas, where subpoenas sought an extremely broad range of sensitive information, business estimated compliance would cost more than $150,000 and would reveal proprietary trade secrets); *see Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 472 (D.S.D. 2011) (district court awarded attorney's fees as a sanction after defendant subjected a nonparty to overly broad and improperly served subpoenas).)

In this instance, Zynga failed to take reasonable steps to avoid imposing an undue burden on Bally. The Subpoenas served on Bally were nearly unlimited in scope and time. They sought documents relating to countless patents and applications that are not subject to the Agincourt Litigation and for a time period dating back for nearly 20 years. Despite Bally's good faith efforts, Zynga refused to make any reasonable compromises in the scope of its Subpoenas. As Zynga's counsel stated bluntly, Zynga has "very little concern for [Bally's] burden" in having to respond to the Subpoenas. (Ex. 1, Miltenberger Decl. 6.)

Further, Zynga failed to make any reasonable efforts to alleviate the burden by offering to offset any of the costs of compliance. Instead, Zynga forced the issue and indicated that it would seek to compel the production of documents either in Delaware or in the Northern District of California where it would be more burdensome to Bally, yet more convenient to Zynga. Accordingly, Bally was left with no option than to file this Motion seeking to protect its interests and to avoid further undue burdens arising out of Zynga's inappropriate Subpoenas. As such, if

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

1  the Court directs Bally to produce any documents in response to the Subpoenas, Bally should be

2  awarded all of its attorneys' fees and costs associated with such a production as a sanction for

3  Zynga's violation of Fed. R. Civ. P. 45(d)(1).

4  **IV.    CONCLUSION**

5         Rule 45 was crafted to protect non-parties to litigation from being unduly burdened with

6  another party's discovery.  Zynga failed to take reasonable steps to avoid imposing an undue

7  burden on Bally and instead served a series of Subpoenas that are over reaching and seek

8  countless documents that are entirely irrelevant to its lawsuit. The law does not countenance such

9  conduct, and Bally should not be victimized by Zynga's failure to narrowly tailor its discovery.

10  As a result of the overly broad and unduly burdensome Subpoenas, Bally respectfully requests

11  that the Court grant this Motion and quash the Subpoenas in their entirety.  Further, if this Court

12  chooses instead to modify the Subpoenas, Zynga must be directed to reimburse Bally for its full

13  cost of compliance including any attorneys' fees and costs it may incur.

14         DATED this 6th day of May, 2014.

15                                    PISANELLI BICE PLLC

16

17                                    By: _____
                                          James J. Pisanelli, Esq., Bar No. 4027
18                                        Christopher R. Miltenberger, Esq., Bar No. 10153
                                          Michael R. Kalish, Esq., Bar No. 12793
19                                        3883 Howard Hughes Parkway, Suite 800
                                          Las Vegas, Nevada 89169
20                                        Telephone:   702.214.2100
                                          Facsimile:   702.214.2101
21
                                          *Attorneys for Non-Parties Bally Technologies,*
22                                        *Brian M. Kelly, John G. Kroeckel, John E. Link, and*
                                          *Paul L. Hickman*
23

24

25

26

27

28

*PISANELLI BICE*
*3883 Howard Hughes Parkway, Suite 800*
*Las Vegas, Nevada 89169*

**CERTIFICATE OF SERVICE**

1

2      I HEREBY CERTIFY that I am an employee of PISANELLI BICE PLLC, and that on the

3   6 day of May, 2014, I caused to be sent via United States mail, postage prepaid, and e-mail a

4   true and correct copy of **MOTION TO QUASH OR MODIFY DEFENDANT ZYNGA,**

5   **INC.'S SUBPOENAS** properly addressed to the following:

6   | | |
|---|---|
| Joseph J. Farnan, Jr. | Claude M. Stern |
| Brian E. Farnan | Evette D. Pennypacker |
| Michael J. Farnan | Michael E. Flynn-O'Brien |
| Rosemary Jean Piergiovanni | QUINN EMANUEL URQUHART & SULLIVAN, |
| FARNAN LLP | L.L.P. |
| 919 North Market Street, 12th Floor | 555 Twin Dolphin Dr., 5th Floor |
| Wilmington, DE 19807 | Redwood Shores, CA 94065 |
| farnan@farnanlaw.com | claudestern@quinnemanual.com |
| bfarnan@farnanlaw.com | evettepennypacker@quinnemanuel.com |
| mfarnan@farnanlaw.com | michaelflynnobrien@quinnemanuel.com |
| rpiergiovanni@farnanlaw.com | *Attorneys for Zynga, Inc.* |
| *Attorneys for Agincourt Gaming, LLC* | |
| | |
| William Christopher Carmody | Ian Bradford Crosby |
| SUSMAN GODFREY L.L.P. | SUSMAN GODFREY L.L.P. |
| 560 Lexington Avenue, 15th Floor | 1201 Third Avenue, Suite 3800 |
| New York, NY 10022 | Seattle, WA 98101 |
| bcarmody@susmangodfrey.com | icrosby@susmangodfrey.com |
| *Attorney for Agincourt Gaming, LLC* | *Attorney for Agincourt Gaming, LLC* |
| | |
| David D. Shank | Manmeet S. Walia |
| SUSMAN GODFREY L.L.P. | SUSMAN GODFREY L.L.P. |
| 901 Main Street, Suite 5100 | 1000 Louisiana, Suite 5100 |
| Dallas, TX 75202 | Houston, TX 77002 |
| dshank@susmangodfrey.com | mwalia@susmangodfrey.com |
| *Attorney for Agincourt Gaming, LLC* | *Attorney for Agincourt Gaming, LLC* |
| | |
| Jack B. Blumenfeld | |
| Jennifer Ying | |
| MORRIS, NICHOLS, ARSHT & TUNNELL, | |
| LLP | |
| 1201 N. Market Street | |
| P.O. Box 1347 | |
| Wilmington, DE 19899-1347 | |
| jblumenfeld@mnat.com | |
| jying@mnat.com | |
| *Attorneys for Zynga, Inc.* | |

PISANELLI BICE
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169

                                              /s/ *Goune*
                                    _____
                                    An employee of PISANELLI BICE PLLC